105 So.2d 714

James PHELPS, Jr.

v.

UNITED STATES STEEL CORPORATION
and Department of Industrial
Relations.

6 Div. 567.

Court of Appeals of Alabama.

June 17, 1958.

Rehearing Denied Aug. 19, 1958.

Cooper, Mitch & Black, Birmingham, for appellant.

Burr, McKamy, Moore & Thomas, Birmingham, for appellees.

CATES, Judge.

This is an unemployment compensation appeal by Phelps from (in effect) that part of the judgment below which held him

disqualified to receive benefits from May 9 through June 30, 1956.

Phelps worked in the Cotton-Tie Mill of the Tennessee Coal and Iron Division of the United States Steel Corporation in Jefferson County, Alabama.

April 28–June 30, 1956, the locomotive tive engineers of the corporation were on strike. See United States Steel Corp. v. Patterson, Ala.App., 104 So.2d 330; United States Steel Corp. v. Walton, Ala.App., 104 So.2d 331; United States Steel Corp. v. Case, Ala.App., 104 So.2d 332; United States Steel Corp. v. Goodwin, Ala.App., 104 So.2d 333, and United States Steel Corp. v. Lewis, Ala.App., 104 So.2d 335.[1]

The corporation claimed and offered testimony which, if believed, would support the contention that it had made arrangements for the operation of the Cotton-Tie Mill beginning May 9. The appellant did not show up for work.

The trial judge said (in part):

"Of course, the company takes the position that it was ready to proceed with some sort of production at the time the Brotherhood strike became effective; that they were ready and intended to go ahead with production there in some parts, at least, of the T.C.I. operation. Now, there is, of course, a dispute with respect to that. That is, there is tendencies of the evidence pointing one way, and tendencies pointing the other way. Of course, Mr. Williamson's statement is in the evidence in the case indicating that T.C.I. did not intend to go ahead and have any production after the effective date, or the effective time, of the Brotherhood strike.

"On the other hand, you have got the testimony of Mr. Meyer and Mr. Kinnear, and various others of the General Superintendents, and other Superintendents there that there was some intention on the part of the people who ran the T.C.I., the management there, to continue in some sort of production, I don't know for how long. I don't know that that is material, but I can't escape the conclusion that under the evidence as to certain units there, there was some purpose on the part of the T.C.I. management to continue production. I don't know that they had any intention of continuing in production over an extended period or not, but it may have been simply their purpose to continue production for a limited time until they got certain of their inventory out of the way. I don't know about that; but I think the evidence does show that there were some employees, some steelworkers, who did not appear for work there immediately after the strike of the Brotherhood went into effect.

\* \* \* \* \* \*

"Now, I think the same thing would apply as to the Cotton Tie Mill operation. I think there, also, there was a bona fide effort between the parties to cooperate and try to work out that problem of getting the cotton ties out, but the evidence is not sufficient here for me to say that they were justified in not going through with it, that is, the workers, and I couldn't say from the evidence that the TCI trumped this up, simply to put the men in default, so to speak, with respect to their unemployment compensation.

"I think they had the work available, and I would have to hold as to that operation, the people who did not participate there became disqualified."

There being substantial evidence to support his finding, we cannot take it upon ourselves to say there was a palpable abuse of the discretion committed to him as a trier of fact.

1. Ante, pp. 428 to 432.

See Speagle v. United States Steel Corp., post, p. 559, 105 So.2d 721.

The judgment below is

Affirmed.